**Eva–Marie GUNDERSON, Plaintiff,**

v.

**The NEIMAN–MARCUS GROUP, INC., Defendant.**

No. 3:96–CV–1115–T.

United States District Court,
N.D. Texas,
Dallas Division.

March 6, 1997.

Robert Edward Goodman, Jr., Law Office of Robert Goodman, Dallas, TX, for Plaintiff.

Stephen Fred Fink, Steven Wayne Sloan, Bryan Patrick Neal, Thompson & Knight, Dallas, TX, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MALONEY, District Judge.

Before the Court is Defendant's Motion for Summary Judgment, filed on October 15, 1996. The motion is opposed. After consideration, the Court is of the opinion that the motion should be granted.

This is an employment discrimination action. Plaintiff brings numerous claims pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq.*, Title VII, 42 U.S.C. § 20000e *et seq.*, the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, and the Texas Labor Code, § 21.001 *et seq.* Plaintiff seeks to recover compensatory and punitive damages, costs of court, interest, and attorney's fees and expenses.

Plaintiff worked as a commission salesperson in the cosmetics department at one of Defendant's stores from 1991 until November, 1995. All relevant events leading to this suit took place in 1995. In January, Plaintiff began to suffer from an autoimmune disorder of the thyroid which caused her to experience headaches, joint pain, dizziness, and severe fatigue. Due to the illness, Plaintiff's physician prohibited her from working between January 20 and April 2.

Plaintiff returned to work on April 3 with a physician's directive to restrict her workweek to four days. Defendant acquiesced to the restriction and returned Plaintiff to her previous position in fragrances. On April 28, however, Defendant reassigned her to a counter known as the Spa bay. Plaintiff strongly opposed this transfer because she earned less commission at the Spa bay, but she continued to work that counter until June 8, at which time her overall condition was such that her physician classified her as totally incapacitated to work.

Plaintiff took another leave of absence from June 8 to July 3, during which time Plaintiff discussed a reassignment with management. Defendant offered her three sales positions within the cosmetics department from which to choose, and she selected the Bobbie Brown counter. Upon her return to work on July 3, Defendant assigned her to the Bobbie Brown counter where she resumed her four-day work-week pursuant to her medical restriction. This arrangement continued until her employment terminated in November.

On October 25, Plaintiff met with Camille Hays, human resource manager at Defendant's store, to discuss Plaintiff's work and medical situation. At this meeting, Plaintiff advised Defendant's management that she was pregnant.[1] Hays held a second such meeting with Plaintiff on October 30, at which time Plaintiff raised the issue of Defendant's compliance with state and federal employment discrimination laws with regard to her.

On November 7, Hays and other management for Defendant held a third meeting with Plaintiff and advised her she would be taken off the Bobbie Brown counter and reassigned to a floating sales associate position in the cosmetics department, still working only four days a week. Plaintiff experi-

---

1. Plaintiff learned of her pregnancy on August 22.

enced a fair measure of success in sales at the Bobbie Brown counter, and she objected to the reassignment because she thought the job would be less financially advantageous for her than her current position with Bobbie Brown.

On November 10, Defendant suspended Plaintiff for returning to the Bobbie Brown counter and refusing to take her floater assignment. Defendant gave her the choice to either end her employment with Defendant or to take the new floater assignment; Plaintiff chose not to take the new position.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on December 14, and thereafter received right to sue notices from the EEOC and its state counter-part, the Texas Commission on Human Rights. Plaintiff filed this suit on April 16, 1996, alleging that Defendant harassed her and discriminated and retaliated against her because of her medical disorder and her pregnancy. Defendant now moves for summary judgment on all of Plaintiff's claims.

Summary judgment should be entered only where the record establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The movant bears the burden of establishing the propriety of summary judgment. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law will identify what facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute as to a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510.

**2.** Plaintiff's first cause of action under the ADA is stated as a disparate treatment claim. However, both parties initially discuss it as a claim for harassment under a hostile work environment, and then analyze it as a disparate treatment allegation.

### ADA

Plaintiff contends that Defendant violated the ADA by (1) classifying or segregating her because of her disability,[2] (2) denying her a reasonable accommodation and ultimately terminating her, and (3) retaliating against her for opposing a discriminatory practice. Defendant first argues that Plaintiff does not qualify under the ADA as having a disability. For the sole purpose of determining Defendant's motion, however, the Court will assume, without deciding, that Plaintiff is disabled within the meaning of the ADA. The Court also assumes, without deciding, that Plaintiff may bring a claim for harassment, meaning here a hostile work environment, under the ADA. *See McClain v. Southwest Steel Co., Inc.*, 940 F.Supp. 295, 301 (N.D.Okl.1996) (applying hostile work environment standards for gender discrimination under Title VII to a claim of hostile work environment brought under the ADA).

■ To prevail on a claim for hostile work environment, Plaintiff must prove that (1) she was disabled and (2) subject to unwelcome harassment (3) because of her disability, that (4) such harassment affected a term, condition, or privilege of her employment, and that (5) Defendant knew or should have known of harassment but failed to take prompt remedial action. *See DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 473, 133 L.Ed.2d 403 (1995).[3]

■ To prove that harassment affected a term, condition, or privilege of employment, Plaintiff must show that the harassment was severe and pervasive, and that it created an abusive working environment. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986). Furthermore, the conduct must objectively be so severe or pervasive that a reasonable person would consider the conduct abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20–22, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).

**3.** *DeAngelis* concerned sexual harassment, but the Court assumes the standard for analyzing harassment would be the same under the ADA as under Title VII. *See Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65–66, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986).

■ The Court has examined each of Plaintiff's grounds for harassment and the evidence Plaintiff believes supports these grounds.[4] Assuming for purposes of analyzing Defendant's motion that her assertions are true, and disregarding all of Defendant's evidence on these points, the Court concludes as a matter of law that the evidence is insufficient to prove a hostile work environment based on her disability.

Plaintiff's superiors may have questioned her regularly concerning her work restrictions, the gravamen of the harassment claim, but every employer has a right to know its employees' availability to work. The Court can find no evidence of harassment in those queries even if an interrogator questioned Plaintiff in a less than cordial manner or made skeptical or sarcastic remarks in response to her answers. A plaintiff's oversensitivity in such matters does not comport with the objectively reasonable standard of harassment applied to hostile work environment claims. On Plaintiff's sparse evidence, a reasonable jury could not conclude that Plaintiff labored under a hostile work environment because of the fact that she was disabled.

■ Plaintiff's next cause of action is for disparate treatment based on her disability. This claim focuses on her involuntary reassignment to the Spa bay several weeks after her return from her first medical leave of absence, as well as her suspension and ultimate discharge.[5] The Court will analyze Plaintiff's suspension and discharge under Plaintiff's claims for retaliation and for failure to accommodate rather than under this disparate treatment cause of action.

Defendant argues that under the burden-shifting model for discrimination cases established in *St. Mary's v. Hicks*, 509 U.S. 502, 506–10, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993), and further defined in *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir.1996)(en banc), Plaintiff cannot meet her burden on the claim that Defendant trans-

ferred her to the Spa bay because of her disability. Defendant maintains that it transferred Plaintiff because sales at the Spa bay were lagging and Plaintiff was one of the top sales producers in fragrances.

After careful review, the Court is of the opinion that there is legally insufficient evidence to allow Plaintiff to prevail on this claim. No reasonable trier of fact could find that Defendant transferred Plaintiff to the Spa bay because she was disabled. *See Mattern v. Eastman Kodak Co.*, 104 F.3d 702 (5th Cir.1997) (if the facts and inferences point so strongly in favor of one party that the Court believes that reasonable persons could not arrive at a contrary verdict, granting judgment as a matter of law is proper).

■ The next cause of action Plaintiff brings is retaliation for claiming rights under the ADA. Plaintiff asserts that Defendant removed her from the Bobbie Brown line and ultimately suspended her in retaliation for asserting her rights under the ADA at the October meetings with management preceding her November 7 notification of change in assignment.

Defendant's stated reason for the reassignment is that it was a business judgment based on various factors: the heavy-sales holiday season was approaching, the Bobbie Brown line was very popular at the time, and a full-time person would have been in a better position to maximize sales of the line. In addition, Defendant believed at the time it assigned Plaintiff to Bobbie Brown that she would return to full-time status before long. Also, Defendant maintains that vendor personnel indicated to management that it would prefer a full-time sales associate at the counter to maximize sales.

Plaintiff offers no affirmative evidence of a discriminatory reason for the transfer, but instead simply claims that each of these reasons is merely pretextual. Plaintiff argues that Defendant did not replace her at the Bobbie Brown counter following her suspension, but Defendant presents an affidavit in

---

**4.** Plaintiff's grounds are listed on page twelve of her response brief to Defendant's motion.

**5.** Plaintiff asserts various other acts of Defendant to be discriminatory under the ADA, but like Title

VII, the ADA was never meant to address every decision made by employers. *Dollis v. Rubin,* 77 F.3d 777, 781–82 (5th Cir.1995). The ADA speaks only to ultimate employment decisions. *Id.*

support of its argument that it found a replacement, but that the person never showed up for work despite repeated promises to do so. Plaintiff also attacks Defendant's belief as to the timing of her return to full–time status. Nevertheless, she produces no evidence whatsoever to contradict or even call into question Defendant's statement that *at the time* it assigned Plaintiff to Bobbie Brown, it did so on the assumption that she would eventually return to full–time service. Finally, Defendant states, and the Court agrees, that Plaintiff mis–characterizes the deposition testimony of Defendant's agents when she states that no one ever spoke with Bobbie Brown vendor personnel about replacing her with a full–time person at the counter, and therefore that reason must be pretextual.

Plaintiff has shown no causal connection between her assertion of rights under the ADA and her transfer. This Court concludes that Plaintiff has not produced legally sufficient evidence upon which a jury could find that Defendant retaliated against her.

■ Plaintiff's final claim under the ADA is that Defendant failed to accommodate her disability. The Court has already stated that it assumes her disability. Plaintiff need only show, then, that Defendant refused to provide her a reasonable accommodation.

Plaintiff acknowledges in her response that Defendant accommodated her medically–necessary restricted work–week by allowing her to work only four days a week from April to the end of October. Defendant then offered her the position as a floating sales associate in the cosmetics department, which job also allowed Plaintiff to work only four days a week. Indeed, Defendant claims to have created the special floater position just for Plaintiff to accommodate her medical disorder and at the same time meet its business requirements. Plaintiff refused the job. The bottom line, then, is that Defendant offered her a position doing what she had been doing–selling cosmetics–and which accommodated her disability by allowing her to work only four days a week as instructed by her doctor.[6]

Plaintiff's argument that Defendant *repudiated* her accommodation by taking her off a particular line and reassigning her to another sales position in the same department is without merit. The floater position required her to work only four days a week, just like her previous position; Defendant did not repudiate her accommodation in an absolute sense, it offered her a new one. Furthermore, Plaintiff's assertion that the new accommodation was not reasonable because her sales commissions as a floater would have decreased from those she earned at the Bobbie Brown counter is speculative. She has provided no competent evidence of commissions for a floater sales associate in comparison to those of a fixed counter sales associate, and thus the Court rejects her argument. *See Frye v. Aspin*, 997 F.2d 426, 429 (8th Cir.1993).

Plaintiff bears the burden of proving that the alternative accommodation was unreasonable, *Riel v. EDS*, 99 F.3d 678, 682 (5th Cir.1996), and she has failed to meet that burden. The Court concludes that Plaintiff refused a reasonable accommodation. If a disabled person refuses a reasonable accommodation, she no longer qualifies as disabled under the ADA. 29 C.F.R. § 1630.9(d); *see Schmidt v. Methodist Hosp. of Ind., Inc.*, 89 F.3d 342, 344–345 (7th Cir.1996).

It is undisputed that the event precipitating Plaintiff's suspension and discharge was her refusal to accept the accommodation position, and as the Court has concluded above that the accommodation was reasonable as a matter of law, Plaintiff's suspension and termination are not actionable under the ADA; she can no longer claim that she was protected under the ADA. As a matter of law, the Court concludes that Defendant provided a reasonable accommodation to Plaintiff as required by the ADA, and therefore Plaintiff shall not recover from Defendant under the ADA on her claims for her transfer to the

---

**6.** Plaintiff argues that a transfer or reassignment as an accommodation is prohibited if it would result in a decrease in pay or status. Defendant points out that, in fact, the floater position offered the same status, benefits and rate of pay as did the Bobbie Brown counter position; as such, Plaintiff would suffer neither a decrease in pay or status by taking the new position. The Court is convinced that Defendant is correct on this point.

floater position, her suspension, or her ultimate discharge from employment. In the alternative, the Court finds that Plaintiff's evidence on summary judgment is legally insufficient to support her claim that Defendant transferred, suspended, and terminated her for a discriminatory reason.

To summarize, Plaintiff cannot prevail on any of her claims brought pursuant to the ADA. The Court grants summary judgment dismissing all ADA claims.

## TITLE VII

■ Plaintiff's next claim is that Defendant harassed her in violation of Title VII on the basis of her sex in that she was pregnant. Plaintiff informed Defendant of her pregnancy on October 25, only two weeks before her employment terminated. The essence of her claim is that Camille Hays, the human resource manager, made several statements to Plaintiff on the subject of her pregnancy and how it might affect her disability and work schedule. Plaintiff vaguely defined those statements in her deposition, but claimed she was offended by them. The Court has reviewed those statements, and as a matter of law, concludes that the statements are legally insufficient evidence of sex–based harassment in the form of either disparate treatment or a hostile work environment. As Defendant argues, they are at worst mildly insensitive. Plaintiff's apparent over–sensitivity to such remarks does not create a cause of action under Title VII, and in fact, the Court is of the opinion that this claim borders on the frivolous.

■ Plaintiff's next claim is that Defendant discharged her for the reason that she was pregnant, in violation of Title VII. The Court determined above that Plaintiff's discharge is not actionable under the ADA; likewise, the Court concludes that her discharge is not actionable under Title VII. This is so because Plaintiff has produced not even a scintilla of evidence in the record that Defendant terminated her because she was pregnant.

Plaintiff's burden here is to produce evidence that would lead a jury to conclude that Defendant's stated justifications were not the real reason behind the employment decision which eventually resulted in her discharge and that her pregnancy was the true reason. The Court concludes that, as a matter of law, Plaintiff has failed in her burden, and thus she cannot prevail on this claim.

■ Plaintiff's final claim under Title VII is that Defendant discharged or otherwise discriminated against her in retaliation for opposing a discriminatory practice. Upon close review of the evidence in the record, the Court concludes that this claim suffers from the same defect as Plaintiff's others: Plaintiff has not, as a matter of law, met her burden to produce legally sufficient evidence from which a factfinder could conclude that Defendant's stated reasons behind its employment decisions were not in fact true and that its true reasons were to retaliate against her for claiming her rights under Title VII.

In summary, Plaintiff has not met her burden on summary judgment so as to prevail on any of her Title VII claims. The Court grants summary judgment on all of her claims brought pursuant to Title VII.

## TEXAS LABOR CODE

Plaintiff brings identical claims against Defendant pursuant to § 21.001 *et seq.* of the Texas Labor Code for discrimination on the basis disability and sex (pregnancy) as she did pursuant to federal law. The standards for analyzing these state claims are identical to their federal counterparts. *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex.1996); *Caballero v. Central Power & Light Co.*, 858 S.W.2d 359, 361 (Tex.1993). Thus, the Court concludes that Plaintiff's state claims fail for the same reasons as do her federal claims. The Court hereby grants summary judgment on all of Plaintiff's claims brought pursuant to the Texas Labor Code.

## FMLA

Plaintiff claims that Defendant denied her rights under the FMLA, which provides that an employee may take twelve weeks of unpaid leave without suffering adverse employment actions as a consequence. Plaintiff explains at length in her response how she believes she was still covered by the FMLA at the time of her separation from Defendant despite the fact that, according to Defendant,

she had used up all of her leave under the act during her two leaves of absence since January. Assuming, however, that Plaintiff was in fact under the protection of the FMLA and had not used up her leave, the Court is at a loss to discern what rights Plaintiff could have possibly lost under the FMLA.

Plaintiff complains that her ultimate discharge for refusing to take the new position violated the "return to work" provision of the FMLA because Defendant's ultimatum did not provide her with an alternative position with pay and benefits equivalent to the Bobbie Brown sales job. The Court, however, has already determined that the new position was a reasonable accommodation under the ADA in that it would afford Plaintiff equivalent pay, benefits and status. Thus, the Court determines that, as a matter of law, Defendant did not violate the "return to work" provision of the FMLA by assigning Plaintiff to the equivalent floater position, nor—using the same logic–did Defendant violate the act by suspending Plaintiff for failing to take the assignment or by terminating her.

Plaintiff's second claim under the FMLA, that Defendant terminated her because she used intermittent leave, is meritless. Before her suspension, Plaintiff worked at the Bobbie Brown counter four days a week. Defendant then offered her a floater position *working four days a week*. If Defendant wanted to terminate her for using her intermittent leave, there would have been no reason for it to offer her a job which was specifically created to accommodate her taking of intermittent leave in the form of a shortened work–week. As a matter of law, Plaintiff has no valid claim for termination in violation of the FMLA's provision affording intermittent leave.

Plaintiff's third claim, that Defendant's failure to give notice to her of how it computed a leave year violated the FMLA, is also without merit. The Court has already given Plaintiff the benefit of the doubt by assuming, without deciding, that she still had leave time left under the FMLA when she was suspended and terminated. Even with this assumption, Plaintiff cannot recover under the FMLA on either of the other two claims discussed above. Were there some

adverse consequence attendant upon her lack of knowledge of how Defendant computed the leave year, the Court's conclusion might be different, especially in light of *Fry v. First Fidelity Bancorporation*, 1996 WL 36910 (E.D.Pa.1996). The Court concludes, as a matter of law, that Plaintiff cannot prevail on her claim that Defendant violated the FMLA by not sharing with her how it computed the leave year because she has not lost any rights under the act.

Finally, Plaintiff asserts a claim for retaliation under the FMLA. As with every other claim for retaliation Plaintiff has brought against Defendant, the Court finds legally insufficient evidence to support such a claim.

In summary, Plaintiff has not met her burden on summary judgment so as to prevail on any of her FMLA claims. The Court therefore grants summary judgment on all of her claims brought pursuant to the FMLA.

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment is hereby **granted.**