**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 95-50423**

---

**VICTORIA RIZZO,**

**Plaintiff-Appellant,**

**VERSUS**

**CHILDREN'S WORLD LEARNING CENTER, INC.,**
**doing business as CWLC Inc,**

**Defendant-Appellee.**

---

Appeal from the United States District Court
For the Western District of Texas

---

May 24, 1996

Before DeMOSS and  DENNIS, Circuit Judges, and DUPLANTIER, District Judge.[1]

DeMOSS, Circuit Judge:

This Americans with Disabilities Act case was brought by Victoria Rizzo against Children's World Learning Centers, Inc., where she worked as a teacher's aide.  Rizzo claims that she was removed from her van driving duties at Children's World because of her hearing impairment.  The district court granted summary judgment in favor of Children's World.  Finding that a genuine issue of material fact exists as to whether Rizzo is a qualified

---

[1] District Judge for the Eastern District of Louisiana, sitting by designation.

individual with a disability, we reverse the district court's summary judgment and remand for trial.

## I. BACKGROUND

Rizzo began working at Children's World as a teacher's aide in March 1991. She had a hearing impairment that required the use of hearing aids, which she disclosed to Children's World on her job application. Her duties at Children's World included assisting in the classroom, doing administrative paperwork and driving children in the Children's World van.

In February 1993, a parent complained to Children's World Director Myra Ryan about Rizzo being left alone with children, given her hearing impairment. The parent also expressed concern over Rizzo's ability to drive the van safely. Director Ryan discussed the complaint with Rizzo and Rizzo admitted that she had experienced further hearing loss and was scheduled to see her doctor to determine if stronger hearing aids were necessary. Director Ryan asked Rizzo whether she could hear a child choking in the back of the van. Rizzo said that she did not know if she could hear a choking child, but she thought that it was safe for her to drive the children.

Rizzo was removed from her driving responsibilities until she could bring a report from her audiologist stating that it was safe for her to drive the van. On March 11, 1993, Rizzo brought a report from her audiologist which said that she could hear emergency vehicles. However, the report did not discuss whether Rizzo could hear a child choking at the back of the van.

2

Children's World told Rizzo that before she could drive the van it needed that information. Rizzo said that the audiologist would have to observe her at work to make that determination and Children's World said that this was acceptable. Nevertheless, the audiologist never observed Rizzo and no further report on her ability to hear a choking child was ever sent to Children's World.

After Rizzo's removal from her driving duties, she was assigned food preparation duties previously performed by Children's World's cook. She was asked to work a split shift (early mornings and late afternoons) and her hours were reduced. Rizzo asserts that as a result of Children's World's actions, she lost respect among her peers and she was shamed by having to prove that it was safe for her to drive the children.

Children's World contends that the reason Rizzo worked a split schedule and cooked meals was that she requested that she not be placed in a classroom by herself for more than thirty minutes at a time, and that she not be placed with school age children. Therefore, their actions were a reasonable accommodation for her disability, not discriminatory acts. Children's World further maintains that Rizzo remained a full-time employee and was not demoted.

Rizzo resigned her position with Children's World on May 20, 1993. She then filed a complaint with the Equal Employment Opportunity Commission, which issued her a right to sue letter. Rizzo then filed suit against Children's World in federal district court under Title I of the Americans with Disabilities Act, 42

3

U.S.C. § 12101, *et seq.*, alleging that because of her hearing impairment she was (1) wrongfully demoted, (2) discriminated against and (3) wrongfully perceived to be a direct threat to the health or safety of herself or others in the work place. She also alleges that Children's World failed to make reasonable accommodation for her disability.

## II. THE DISTRICT COURT OPINION

The district court applied the **McDonnell Douglas** Title VII burden shifting paradigm.[2] **McDonnell Douglas v. Green**, 411 U.S. 792 (1973); **Texas Dep't of Community Affairs v. Burdine**, 450 U.S. 248 (1981). Applying the **McDonnell Douglas** framework, the district court found that Rizzo met her *prima facie* case of showing that "she was a disabled person who was 'otherwise qualified' to perform her job duties." The district court found that she was "otherwise qualified" because she could, with reasonable accommodation, perform the essential functions of her position. The district court found that there was "a relatively inexpensive device [which] might have been placed in the van to amplify sounds coming from behind the driver," thereby accommodating any disability she might have.

Because Rizzo met her *prima facie* case, the district court

---

[2] We recently made clear that the Title VII burden shifting framework applies in ADA cases. **Daigle v. Liberty Life Ins. Co.**, 70 F.3d 394, 396 (5th Cir. 1995). This is the same approach followed by other circuits. **See Newman v. GHS Osteopathic, Inc.**, 60 F.2d 153, 157 (3d Cir. 1995); **DeLuca v. Winer Indus., Inc.**, 53 F.3d 793, 797 (7th Cir. 1995); **Ennis v. National Ass'n of Business & Educ. Radio, Inc.**, 53 F.3d 55, 57 (4th Cir. 1995); **Smith v. Barton**, 914 F.2d 1330, 1339-40 (9th Cir.), *cert. denied*, 501 U.S. 1217 (1991).

4

shifted the burden to Children's World to show a legitimate, nondiscriminatory reason for its decision to temporarily remove her from driving duties. The district court found that Children's World met this burden because its statement that it removed Rizzo because she might not hear a choking child was a legitimate, nondiscriminatory reason.

The district court then placed the burden on Rizzo to come "forward with a genuine issue of fact as to whether Children's World's accommodations were discriminatory or unreasonable." The district court found that Rizzo did not meet this burden and, thus, held that as a matter of law Children's World did not violate the ADA.

### III. STANDARD OF REVIEW

We review district court orders granting summary judgment *de novo*, applying the same standards as the district court. *Harper v. Harris County, Texas*, 21 F.3d 597, 599 (5th Cir. 1994). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

As we recently said:

> Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact. Such a showing entitles the movant to summary judgment as a matter of law. The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. Once the movant produces such evidence, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial -- that

5

is, the nonmovant must come forward with evidence establishing each of the challenged elements of its case for which the nonmovant will bear the burden of proof at trial.

The nonmovant can satisfy its burden by tendering depositions, affidavits, and other competent evidence to buttress its claim. . . . Summary judgment is appropriate, therefore, if the nonmovant fails to set forth specific facts, by affidavits or otherwise, to show there is a genuine issue for trial.

*Topalian v. Ehrman*, 954 F.2d 1125, 1131-31 (5th Cir.1992), *cert. denied*, 506 U.S. 825 (1992) (internal citations omitted).

When a party moves for summary judgment on an issue for which it bears the burden of proof at trial, it must demonstrate the absence of a fact issue as to that issue. *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994).

### IV. DISCUSSION

The district court improperly analyzed this case. This is not a circumstantial evidence case, where we apply the *McDonnell Douglas* burden shifting framework; rather, this is a direct evidence case. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

A plaintiff can prove discrimination in two ways, either "by direct evidence or by an indirect or inferential method of proof. Discrimination can be shown indirectly by following the 'pretext' method of proof set out in *McDonnell Douglas*." *Mooney v. Aramco Services, Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995)(internal citation omitted). "The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the plaintiff has his day in court despite the unavailability of direct evidence." *Trans World*

6

*Airlines*, 469 U.S. at 121 (internal quotations omitted); *see Mooney*, 54 F.3d at 1217. "In the rare situation in which the evidence establishes that an employer openly discriminates against an individual it is not necessary to apply the mechanical formula of *McDonnell Douglas* to establish an inference of discrimination." *Moore v. U.S.D.A.*, 55 F.3d 991, 995 (5th Cir. 1995); *see Trans World Airlines*, 469 U.S. at 121 ("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination.").

In the instant case there is direct evidence that Children's World made an employment decision because of a disability. Children's World does not deny that Rizzo was removed from driving duties because of her hearing impairment. Therefore, we need not engage in the *McDonnell Douglas* presumptions in order to infer discrimination: Children's World admits that it discriminated. Children's World, however, contends that it had a reason to discriminate. It argues that Rizzo's driving of the van would pose a direct threat to the children, because she might not be able to hear if one of them was choking.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that

7

such individual holds or desires." *Id.* § 12111(8); *Daugherty v. City of El Paso*, 56 F.3d 695, 696 (5th Cir. 1995), *cert. denied*, 116 S. Ct. 1263 (1996).

The fact that the district court incorrectly applied the law does not end our inquiry; we must still examine the record. If we find that there is no genuine issue of material fact, we will affirm the summary judgment, albeit on different grounds. *Brothers v. Klevenhagen*, 28 F.3d 452, 457 n.7 (5th Cir.), *cert. denied*, 115 S. Ct. 639 (1994). Therefore, we will examine the entire case to determine if there is a fact issue.

To prevail on her ADA claim, Rizzo must prove that (1) she has a disability; (2) she was qualified for the job; and (3) an adverse employment decision was made solely because of her disability. *Doe v. University of Maryland Medical System Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995); *Chiari v. City of League City*, 920 F.2d 311, 315 (5th Cir. 1991) (Rehabilitation Act of 1973 case).

**A.   Disability**

A "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities of [the] individual." 42 U.S.C. §12112(a). Children's World does not contest that a hearing impairment is a disability, or that Rizzo is disabled. Therefore, summary judgment for Children's World is inappropriate on the issue of whether Rizzo is disabled under the ADA.

## B. Qualified to do the Job

Rizzo has the burden of proving that she can perform, with or without reasonable accommodation, all of the essential elements of her job. *Doe*, 50 F.3d at 1264; *Chiarai*, 920 F.2d at 315. Children's World put on summary judgment evidence showing that Rizzo is not a qualified individual with a disability, because she could not perform an essential element of the job, namely, driving the bus safely. Children's World pointed out that Rizzo might not be able to hear a child choking in the back of the van, thus she was a direct threat to the children. Rizzo countered by bringing forth evidence showing that she possessed all required licenses to be able to drive the bus. She also presented testimony from her audiologist that she could hear emergency vehicles.

The question is not whether Rizzo could hear a choking child. There is no evidence that an essential element of the job is the ability to hear a choking child.[3] Instead, the question is whether the person is able to safely drive the van and not present a direct threat to the children's safety. The ADA provides that "'qualification standards' may include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the work place." 42 U.S.C. § 12113(b). The regulations define a direct threat as:

---

[3] Indeed, there is no evidence that a choking child makes any noise, let alone exactly what sound the child would make. It is possible that even a driver with perfect hearing could not hear a child choking in the back of the van.

9

a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. The determination that an individual poses a "direct threat" shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence. In determining whether an individual would pose a direct threat, the factors to be considered include:
(1) The duration of the risk;
(2) The nature and severity of the potential harm;
(3) The likelihood that the potential harm will occur; and
(4) The imminence of the potential harm.

29 C.F.R. § 1630.2(r); *see* **School Bd. of Nassau County v. Arline**, 480 U.S. 273, 287-88 (1987) (Rehabilitation Act of 1973 case). Whether one is a direct threat is a complicated, fact intensive determination, not a question of law. To determine whether a particular individual performing a particular act poses a direct risk to others is a matter for the trier of fact to determine after weighing all of the evidence about the nature of the risk and the potential harm.

An employee who is a direct threat is not a qualified individual with a disability. As with all affirmative defenses, the employer bears the burden of proving that the employee is a direct threat. *See* Interpretive Guidance to 29 C.F.R. § 1630.15(b) & (c)("With regard to safety requirements that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities, an *employer must demonstrate that the requirement*, as applied to the individual, *satisfies the*

10

'*direct threat' standard* in section 1630.2(r) in order to show that the requirement is job related and consistent with business necessity")(emphasis added). Therefore, to prevail on summary judgment on the direct threat issue, Children's World must prove that Rizzo is a direct threat as a matter of law. *Lindsey*, 16 F.3d at 618.

We previously addressed direct threat in the driving context in *Daugherty*, 56 F.3d 695 (ADA case) and *Chandler v. City of Dallas*, 2 F.3d 1385 (5th Cir. 1993) (Rehabilitation Act of 1973 case), *cert. denied*, 114 S. Ct. 1386 (1994). Both cases involved insulin dependent diabetics who were not allowed to drive city vehicles. In both cases government rules and regulations specifically prohibited insulin dependent diabetics from driving for the cities. In fact, the United States Department of Transportation regulations prohibit insulin dependent diabetics from operating large trucks or buses. 49 C.F.R. §§ 383.5, 383.23, 383.71, 391.41 (1994); *Daugherty*, 56 F.3d at 697. Because the risk presented by insulin dependent drivers is so great, we have held, "as a matter of law, [that] a driver with insulin dependent diabetes . . . presents a genuine substantial risk that he could injure himself or others." *Chandler*, 2 F.3d at 1395.

The situation presented in the instant case is different. Children's World has pointed us to no statute or regulation regarding hearing-impaired drivers. Texas has no requirement that its day care workers meet certain minimum hearing requirements. We do not have voluminous caselaw regarding the dangers presented by

11

hearing impaired drivers. *Cf.* ***Chandler***, 2 F.3d at 1395 (citing cases regarding dangers posed by insulin dependent diabetics). No evidence was presented regarding the ability of anyone to hear a choking child while driving a van. Children's World only pointed out a lack of evidence on the issue of Rizzo's ability to hear a choking child. Rizzo countered with evidence showing that it was safe for her to drive the van. Whether a person who can hear emergency vehicles, but cannot hear a choking child, is a direct threat is a question of fact. Therefore, there exists a genuine issue of material fact as to whether Rizzo is a direct threat, and thus, whether she was a qualified individual with a disability. Because there is a genuine issue of material fact, summary judgment is inappropriate.

In deciding whether Rizzo's hearing impairment presents a direct threat, the factfinder should of course weigh heavily the fact that Rizzo drives a van carrying small children. That any potential harm will befall children, the most vulnerable members of our society, will greatly impact the consideration of "[t]he nature and severity of the potential harm." 29 C.F.R. § 1630.2(r). We wholeheartedly agree with the district judge's statement that "the health and safety of the children [is Children's World's] primary consideration." Our opinion should in no way be interpreted as lessening the protection offered to children. Rather, we are merely saying that, at this time, there is a genuine issue of material fact as to whether Rizzo is a direct threat, making summary judgment inappropriate.

12

**C. Adverse Employment Decision**

In addition to proving that she is a qualified individual with a disability, Rizzo must also prove that Children's World took an adverse employment action solely because of her disability. Children's World argues that it took no adverse employment action at all, but merely worked to accommodate Rizzo's disability.

Specifically, Rizzo argues that Children's World (1) removed her from her driving duties (2) reduced her hours, (3) forced her to work a split shift and (4) forced her to work in the kitchen, which she found demeaning. Children's World maintains that Rizzo remained a full-time employee and her hourly wage was never reduced. Any loss in hours was due to lowered enrollment, as well as Rizzo's request to leave early in order to get to another job. The split shift was due to Rizzo's request that she not teach school age children and that she not be alone in a classroom for more than 30 minutes at a time. The kitchen work, Children's World contends, was not demeaning, because everyone at the center helped with food preparation.

The ADA prohibits discrimination in the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112. This language is broad enough to encompass the actions Rizzo has alleged. 29 C.F.R. § 1630.5 ("[I]t is unlawful for a covered entity to limit, segregate, or classify a[n] . . . employee in a way that adversely affects his or her employment opportunities or status on the basis of disability."); Interpretive Guidance to 29 C.F.R. § 1630.5 ("[I]t would be a violation . . . for an employer to limit the

13

duties of an employee with a disability based on a presumption ... about the abilities of an individual with such a disability."). Lowering someone's hours, requiring them to work a split shift and changing their duties from that of bus driver to cook is certainly a change in the conditions of employment.

Children's World raises several good points to rebut Rizzo's claims. However, its arguments merely serve to illustrate that a genuine issue exists which must be resolved by the jury. In just one example, Rizzo says kitchen work was demeaning, while Children's World claims that everyone helped out in the kitchen. A factfinder will have to determine whether consigning Rizzo to kitchen duty was an adverse action taken because of her disability. Thus, there is a genuine issue of material fact as to whether Children's World took an adverse employment action against Rizzo, and, again, summary judgment is inappropriate.

## V. CONCLUSION

We do not doubt that Children's World acted in good faith throughout this matter, motivated by what it considered to be concern for the children's safety. Nonetheless, there is a genuine fact issue regarding whether Rizzo poses a direct threat, making summary judgment inappropriate. Therefore, the judgment of the district court is REVERSED and the case is REMANDED for trial.