**Suzanne GASTON, Plaintiff,**

v.

**JACK POST CORPORATION, Defendant.**

**No. 1:96CV196–S–A.**

United States District Court,
N.D. Mississippi,
Eastern Division.

Aug. 14, 1997.

Jim Waide, Victor I. Fleitas, Waide & Chandler, P.A., Tupelo, MS, for Plaintiff.

Timothy W. Lindsay, Mitchell, McNutt, Threadgill, Smith & Sams, P.A., Jackson, MS, for Defendant.

## OPINION

SENTER, Chief Judge.

In this case, the plaintiff, Suzanne Gaston, charges the defendant, Jack Post Corporation, with violation of the Americans with

Disabilities Act. Presently before the court is defendant's motion for summary judgment.[1]

The facts are basically undisputed. In February, 1995, Gaston suffered a work-related back injury. She was extensively treated non-surgically by different physicians for a bulging disc, which resulted in a final diagnosis of degenerative disc disease and a finding of a 5 per cent permanent partial disability to the body as a whole. Gaston was released to return to her previous job duties in July, 1995.

On August 8, 1995, Gaston returned to work. By that time, Jack Post had received Gaston's work restrictions from her physician, which included limitations on lifting (20–30 pounds, occasionally and 35 pounds, rarely), forward bending, and twisting. She was allowed to sit and stand in 45 and 30 minute increments, respectively.[2] Although Jack Post knew that Gaston's doctor had released her to her previous job as sheet folder, the company placed her in the lighter duty position of rubber cutter and reconfigured her work area by lowering the cutting table and providing a stool.[3] From the outset, Gaston requested different seating, and the company attempted to satisfy her demands by providing her with a stool that had a back, footrest, and cushions. In response, Gaston insisted that she was to have a chair with lumbar support as indicated in the functional capacity evaluation.[4]

It is at this point that the parties' versions of the facts significantly diverge. According to Jack Post, Gaston voluntarily left the work premises to obtain more specific restrictions from her physician after company personnel questioned her chair demand. Gaston maintains that Jack Post told her to leave the premises immediately to get more definite work restrictions from her doctor and in fact directed another employee to drive her home. Be that as it may, Gaston never returned to Jack Post after August 10 and did not obtain the additional information from her doctor (despite her efforts to do so). Three days later Gaston contacted the attorney handling her worker's compensation claim, and on August 23, she settled all matters related to that claim.

On September 20, Jack Post was contacted by the Mississippi Employment Security Commission (MESC) and advised that Gaston had filed for unemployment benefits on the ground that she was terminated. Jack Post contested Gaston's claim, and the MESC found that Gaston was not terminated but "voluntarily [left] her employment" when she "agree[d] to secure additional information concerning restrictions placed on her [but did not] make any attempts to return to work after the last day she worked...." According to the commission, Gaston "should have re-contacted [Jack Post] to see if she could return without this information being obtained. [Gaston] did not take the necessary steps to continue her employment, [and] therefore ... she has not shown good cause for leaving within the meaning of the law." Gaston appealed that decision to the full commission, which affirmed, and although

---

1. In response to this motion, plaintiff conceded her claim under 42 U.S.C. § 1981.

2. In her response, Gaston states that her doctor "noted that [she] had limitations in performing life's ordinary functions," including walking. This is a mischaracterization of the doctor's deposition testimony. Indeed, the only reference the court can find to a walking limitation is in Gaston's affidavit, which states: "I am substantially limited in the major life activity of walking because I cannot tolerate to walk for periods in excess of 30 minutes without pain." This is not the first time the court has discovered similar problems with this particular counsel's construction of the facts and the law. Though the oversight is slight on this occasion, as Gaston herself can certainly testify regarding her limitations, the court draws attention to this matter as a

caution to counsel that he must be more diligent in the future in his representations to the court.

3. Gaston concedes this was a job within her restrictions.

4. When Gaston reached maximum medical improvement, her physician ordered the functional capacity evaluation (FCE). The doctor's letter setting forth Gaston's work restrictions was based on his evaluation of the FCE. The specific reference in the FCE to a chair with lumbar support was not carried forward to the doctor's letter, and, indeed, the doctor testified later that his restrictions could have been more "specific for days," but that those included in the letter were "reasonable" in light of the jobs he was reviewing and were "about as specific as you can get."

she was advised of her right to seek further judicial review, she did not pursue that avenue.

## DISCUSSION

The Americans with Disabilities Act prohibits discrimination against qualified employees with a disability "because of the disability...." 42 U.S.C. § 12112(a). To state a prima facie case under the ADA, Gaston must prove (1) she suffers from a "disability"; (2) she is a "qualified individual"; and (3) she suffered an adverse employment action because of her disability. *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758, 763 (5th Cir.1996). On summary judgment, plaintiff need only show that there is a genuine issue of material fact on each of these elements.

A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds...." 42 U.S.C. § 12111(8). A "disability" is

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Gaston seeks relief under either subsections (A) or (C).

To proceed under subsection (A), Gaston must raise a genuine issue of material fact that degenerative disc disease is an impairment which substantially limits one or more of her major life activities, which include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Gaston is "substantially limit[ed]" if she (1) is unable to perform a major life activity that the average person in the general population can perform; or (2) is significantly restricted as to the condition, manner, or duration under which she can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can

perform the same major life activity. 29 C.F.R. § 1630.2(j)(1). With respect to the major life activity of *working,*

[t]he term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3).

■ The court has no difficulty in finding that Gaston's degenerative disc disease is a physical impairment or that Gaston is somewhat limited by that impairment. However, the court cannot reach the conclusion that Gaston has raised a genuine issue of material fact that she is *substantially* limited in any major life activity. In this court's view, no reasonable jury could find that Gaston's back condition places any kind of substantial limitation on her ability to work or perform manual tasks. Indeed, her own testimony is that she can work and perform the associated manual tasks in the job offered her by the company after her injury, and she offers no additional evidence, except generalizations, that she is otherwise substantially limited in performing any other manual tasks. Although the court accepts Gaston's representation that she is unable to walk longer than 30 minutes at a time, it does not believe this is a substantial limitation as contemplated by the statute or that any reasonable jury could so find.

■ To proceed under subsection (C), Gaston must raise a genuine issue of material fact that Jack Post regarded her as having a disability. She can do that by showing she

(1) has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) has none of the impairments defined in paragraph (h)(1) or (2) of this section but is

treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l).

In this regard, Gaston argues that Jack Post "was fully aware of [her] impairment and her numerous limitations [and thus,] had information from which it could regard Ms. Gaston as disabled." The logic of this argument escapes the court. Certainly, Jack Post knew about Gaston's back ailment and the work limitations imposed by her physician. But this knowledge alone does not translate into the conclusion that the company regarded Gaston as disabled. Indeed, the company needed this information to pinpoint the job within its facilities which was most compatible with Gaston's restrictions. To transmute these actions into something other than an attempt to continue the employment of a long-time employee distorts the fundamental principles behind ADA.

Therefore, having carefully considered the matter, the court is of the opinion that there is no genuine issue of material fact and Jack Post is entitled to judgment as a matter of law on the first element of the prima facie case and is thus entitled to summary dismissal of this action. The court continues its discussion only out of an abundance of caution.

■ Assuming arguendo that Gaston is disabled, the court shifts its focus to whether Gaston has raised a genuine issue of material fact regarding whether Jack Post reasonably accommodated her disability, since "discrimination" includes failing to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 335–36 (5th Cir. 1997). The court has no hesitation in finding that Gaston has not carried her burden in this regard. Jack Post took every reasonable step it could, except the one Gaston requested, to accommodate the work restrictions placed upon her. Indeed, the company went beyond its obligations by placing Gaston in a lighter duty job than the one to which her doctor returned her and then adjusting the work environment by lowering the cutting table and providing Gaston with seating. On more than one occasion during the short time Gaston returned to work, the company attempted to appease Gaston's seating demands It refused only her specific request for a "contour" chair and then, only until the doctor elaborated on Gaston's restrictions. Under these circumstances, no reasonable jury could find that the steps Jack Post took to accommodate Gaston's physical limitations were not reasonable.

■ Finally, and again assuming arguendo that Gaston is disabled, the court is of the opinion that Gaston suffered no adverse employment decision because of her disability. Indeed, the MESC found that Gaston voluntarily quit her job, and because she did not appeal that decision to the circuit court when state law afforded her that option, she is collaterally estopped from arguing otherwise. Gaston's effort to narrow the alleged adverse employment action to "[f]orcing [her] to leave the plant" is not persuasive. At the very most, the actions of Jack Post constituted an attempt to accommodate Gaston's restrictions further, since a leave of absence can be a form of reasonable accommodation. As the MESC found, Gaston "agreed" to secure more specific restrictions from her doctor, and thus, in this court's view, she "agreed" to the company's accommodation.

## CONCLUSION

Having carefully considered the evidence, argument of counsel, and the applicable case law, the court is of the opinion that there is no genuine issue of material fact and defendant is entitled to judgment as a matter of law. In this court's view, no reasonable jury could find that plaintiff is disabled as that term is defined in the ADA. Assuming plaintiff is disabled, however, she has failed to raise a jury on either the issue of reasonable accommodation or adverse employment action. The motion for summary judgment is therefore well taken.

An appropriate final judgment shall issue.

## *FINAL JUDGMENT*

Pursuant to an opinion filed contemporaneously herewith, it is ORDERED:

That the motion of defendant Jack Post Corporation for summary judgment is granted;

That this cause is hereby dismissed with prejudice.