**Cynthia DARBY, Plaintiff,**

**v.**

**HINDS COUNTY DEPARTMENT OF HUMAN SERVICES, State of Mississippi, Defendants.**

**No. 3:98CV68LN.**

United States District Court, S.D. Mississippi, Jackson Division.

Aug. 11, 1999.

Paul A. Koehber, Jackson, MS, Cynthia Darby, Jackson, MS, plaintiff pro se.

Robert E. Sanders, Young, Williams, Henderson & Fuselier, Jackson, MS, for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on the motion of the defendants Hinds County Department of Human Services and the State of Mississippi for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.[1] *Pro se* Plaintiff Cynthia Darby opposes the motion, and the court, having considered the parties'

---

1. While the style of the case appears to reflect that Darby intended to sue both the Hinds County Department of Human Services and the State, she actually effected service upon the State of Mississippi Department of Human Services. Defendant did not raise a question as to service of process in its answer and therefore, has waived the issue. *See* Fed. R.Civ.Proc. 12(h)(1).

memoranda and submissions, concludes that the motion is well taken and should be granted.[2]

In April 1988, after completing a program to help her enter the working world after receiving public assistance, Cynthia Darby, a single parent, was hired as a clerk typist by the Hinds County Department of Human Services, a unit of the Mississippi Department of Human Services, created under Miss.Code Ann. § 43–1–9. Over the course of several years, Darby was eventually promoted to the position of eligibility worker. In recent years, numerous family medical crises have necessitated that she take extensive amounts of time off from work.[3] Specifically, her son has suffered from severe asthma since his birth in 1991; from August 1996 to December 1998, her mother was in a coma; in September 1997, she was hospitalized for severe depression; and in September 1998, her daughter was critically injured in an automobile accident. Darby charges that she has been denied leave time, has received written and verbal reprimands, has been harassed by co-workers and has received poor evaluations, all as a result of her having to take time away from work to care for her son, daughter and mother.

Darby filed this suit alleging that the Department, in violation of her rights under the Family Medical Leave Act of 1993 (FMLA or Act), 29 U.S.C. § 2601, *et seq.*, denied her leave and retaliated against her for exercising her rights under the Act.[4] She also claims that the Department, in violation of § 2112 of the Americans with Disabilities Act (ADA), has discriminated or retaliated against her because of the known disabilities of her mother, son and daughter. *See* 42 U.S.C. § 12112(b)(4) (prohibited discrimination under ADA includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or an association").

By its motion, the Department urges that pursuant to the Eleventh Amendment, it is entitled to immunity from suit. Alternatively, the Department denies that it has violated Darby's rights under the FMLA, and it asserts that as Darby is not a "qualified individual" under the ADA, it had no obligation under that Act to modify her employment schedule to allow her to care for family members who might qualify as disabled under the ADA. Based on the following, the court finds that plaintiff's FMLA action is barred by the Eleventh

---

**2.** At the time the complaint was filed, Darby was represented by counsel. By the court's December 31, 1998 order, counsel was allowed to withdraw his representation and Darby was given the opportunity to employ private counsel or notify the clerk that she would represent herself. On February 4, 1999, Darby informed the court that she intended to represent herself in this matter. On July 1, 1999, the court granted the State's motion for leave to supplement its summary judgment motion to raise the issue of Eleventh Amendment immunity whereupon Darby moved separately "for leave to rescind motion to dismiss" and for the appointment of counsel. These motions will be denied.

**3.** According to the affidavit of Donald J. Keshel, Director of Human Resources for the Department, in 1996, 1997 and 1998, Darby took 421, 915 and 559 hours of leave, respectively.

**4.** The FMLA affords an eligible employee twelve weeks of leave per year, which may be used in four circumstances: 1) in the event of the birth of a child and in order to care for the child; 2) in the event of placement of a child with the employee for adoption or foster care; 3) in order to care for a spouse, child or parent with a serious medical condition; and 4) in the event that the employee suffers a serious medical condition which makes him unable to perform his job. 29 U.S.C. § 2611(2)(A). The Act prohibits an employer from interfering with an eligible employee's use of leave time. 29 U.S.C. § 2615(a)(1). "Thus, employers have a prescriptive obligation under the FMLA—they must grant employees substantive rights guaranteed by the FMLA—and they have a proscriptive obligation—they may not penalize employees for exercising these rights." *Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 318 (5th Cir. 1999).

Amendment and that summary judgment should be entered as to her ADA claim.

■ According to the Eleventh Amendment,

> [t]he Judicial power of the United States shall be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The narrow language of this amendment has been broadly construed by the Supreme Court "to embrace the larger principle that a state is granted immunity from suits initiated by private entities or persons in federal courts, if the State has not consented to such suits." [5] *Coolbaugh v. State of Louisiana,* 136 F.3d 430, 433 (5th Cir.1998), *cert. denied,* 525 U.S. 819, 119 S.Ct. 58, 142 L.Ed.2d 45 (1998) (citing *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996)).

■ Pursuant to the authority granted by § 5 of the Fourteenth Amendment, in certain circumstances, Congress may abrogate the states' right to immunity under the Eleventh Amendment. *Id. See* U.S. Const. amend. XIV, § 5 ("Congress shall have the power to enforce, by appropriate legislation, the provisions of this article."). "In order to determine whether Congress has abrogated the States' sovereign immunity, [the court] ask[s] two questions: first, whether Congress has 'unequivocally express[ed] its intent to abrogate the immunity'; and second, whether Congress has acted 'pursuant to a valid exercise of power.'" *Seminole Tribe,* 517 U.S. at 55, 116 S.Ct. at 1123 (quoting *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985)) (internal citations omitted, alterations in original).

■ As to *Seminole Tribe*'s first inquiry, the FMLA provides that "[a]n action to recover damages or equitable relief prescribed [in § 2617(a)(1) ] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction." 29 U.S.C. § 2617(a)(2). "Public agency," in turn, is defined by reference to § 203(x) of the Fair Labor Standards Act, 29 U.S.C. § 2611(4)(A)(iii), and includes a State or any agency of the State. 29 U.S.C. § 203(x). In *Scott v. University of Mississippi,* 148 F.3d 493, 499 (5th Cir.1998), the Fifth Circuit, construing a similar definition in the ADEA, concluded that by "expanding the definition of 'employer' to include 'a State or political subdivision of a State and any agency or instrumentality of a State,' Congress, via the 1974 amendments to the ADEA, 29 U.S.C. § 621 *et seq.,* had 'evidence[d] a clear statement that [it] intended to subject states to suit in federal court.'" Accordingly, faced with similar language in the FMLA, the court likewise finds that "'it is clear that the State is the [intended] defendant to the

---

**5.** Pursuant to *Minton v. St. Bernard Parish School Board,* 803 F.2d 129, 131 (5th Cir. 1986), the court considers six factors in deciding whether an entity is an arm of the state enjoying Eleventh Amendment immunity (if it has not been otherwise waived or abrogated): (1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to state-wide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property.

In the instant case, the court is satisfied that the Department is properly characterized as an arm of the State. First, as part of the executive branch, the Department receives its funding from the State and its chief administrative officer serves at the will and pleasure of the Governor. Miss.Code Ann. § 43–1–2 (Mississippi Department of Human Services "shall be under the policy direction of the Governor"). Furthermore, the Department is concerned with state-wide problems, *see* Miss. Code Ann. 43–1–5, has the capacity to sue, *see* Miss.Code Ann. § 43–13–121, and may own property, *see* Miss.Code Ann. § 43–27–10.

suit.'" *Scott*, 148 F.3d at 499 (quoting *Seminole Tribe*, 517 U.S. at 57, 116 S.Ct. at 1124).

■ The second prong of the *Seminole Tribe* inquiry asks "whether Congress has abrogated state immunity in the [FMLA] through a valid exercise of its enforcement power." *Coolbaugh*, 136 F.3d at 433. Congress's enforcement power, which flows from § 5 of the Fourteenth Amendment, includes the authority to both remedy and prevent constitutional violations, *id.* at 434, but does not extend to enactments which create new substantive rights, *id.* (citing *City of Boerne v. Flores*, 521 U.S. 507, 519, 117 S.Ct. 2157, 2164, 138 L.Ed.2d 624 (1997)). On this point, the Court in *Flores* instructed that,

> [w]hile the line between measures that remedy or prevent unconstitutional actions and the measures that make a substantive change in the governing law is not easy to discern, and Congress must have wide latitude in determining where it lies, the distinction exists and must be observed. There must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.

*Flores*, 521 U.S. at 519–20, 117 S.Ct. at 2164. The appropriateness of remedial measures must be considered in light of the evil presented, for measures which go beyond what might reasonably be considered necessary to prevent unconstitutional actions lack the requisite "congruence and proportionality." Explaining this proportionality requirement, the Fifth Circuit in *Coolbaugh* stated that there are two primary facets to the inquiry: "the extent of the threatened constitutional violations, and the scope of the steps provided in the legislation to remedy or prevent such violations." *Id.* Analysis of the first facet requires that the court examine the congressional "findings in [the FMLA] where Congress detailed its understanding of the extent of the evil it was addressing." *Coolbaugh*, 136 F.3d at 435. As reflected by the text of the FMLA itself, the evil which Congress purported to address in enacting the FMLA was gender discrimination. *See* 29 U.S.C. § 2601(b) (identifying as one purpose of the FMLA the "minimiz[ation] [of] the potential for employment discrimination on the basis of sex by ensuring that leave is generally available for eligible medical reasons"). Congress's "understanding of the extent of th[at] evil" is set forth in § 2601(a), in which Congress found as follows:

> [D]ue to the nature of the roles of men and women in society, the primary responsibility for family caretaking often falls on women, and such responsibility affects the working lives of women more than it affects the working lives of men; and [that] employment standards that apply to one gender only have serious potential for encouraging employers to discriminate against employees and applicants for employment who are of that gender.

29 U.S.C. § 2601(a)(5) and (6).[7] Even giving substantial deference to Congress's finding that there is a "serious potential for encouraging employers to" discriminate against women, *see Coolbaugh*, 136 F.3d at 437, this court, like every other court that has addressed this issue, is unable to conclude that the means adopted

---

7. In § 2601(a), Congress further found that

(1) the number of single-parent households and two-parent households in which the single parent or both parents work is increasing significantly;

(2) it is important for the development of children and the family unit that fathers and mothers be able to participate in early child rearing and the care of family members who have serious health conditions;

(3) the lack of employment policies to accommodate working parents can force individuals to choose between job security and parenting; [and]

(4) there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods.

While these may be legitimate and well-founded concerns, they are not evils of constitutional dimension.

by Congress—a twelve-week leave period—is proportional to the harm it sought to prevent, gender-based discrimination in the workplace. *See id.* at 435.

Utilizing the proportionality test set forth in *Flores*, the court in *Kilvitis v. County of Luzerne*, No. 3:CV98–1824, 1999 WL 428246, at *5 (M.D.Pa. June 25, 1999), concluded that by enacting the FMLA, "Congress did more than attempt to enforce the Equal Protection Clause ... [R]ather, [i]t created a statutory entitlement to 12 weeks of leave for eligible employees."[8] The court thus concluded that because Congress thus exceeded its authority, its purported abrogation of Eleventh Amendment immunity is ineffectual. Numerous courts have come to this same conclusion. *See Sims v. University of Cincinnati*, No. Civ. C–1–96–846, 1999 WL 221107 at *4 (court) ("Congress did not effectively abrogate the states' immunity from suit under the FMLA"); *Post v. State of Kansas*, No. 98–1238–JTM, 1998 WL 928677 (D.Kan. Dec.10, 1998) (concurring with view that Eleventh Amendment bars FMLA claims against state agencies); *Driesse v. Florida Bd. of Regents*, 26 F .Supp.2d 1328, 1331 (M.D.Fla.1998) (internal quotations omitted) ("Congress seems to be suggesting that this entitlement is necessary under the Equal Protection Clause in order to prevent gender discrimination.... This is patently the sort of substantive legislation that exceeds the proper scope of Congress' authority under § 5."); *McGregor v. Goord*, 18

F.Supp.2d 204, 205 (N.D.N.Y.1998) ("No such proportionality is present where Congress creates a statutory right to leave for all eligible employees with the apparent purpose of remedying and deterring sex discrimination."); *Thomson v. Ohio State Univ. Hosp.*, 5 F.Supp.2d 574, 576 (S.D.Ohio 1998) ("The means employed by the FMLA are not congruous or proportional to the goal of achieving equal treatment, regardless of gender, in the workplace."); *Garrett v. Board of Trustees of the Univ. of Ala.*, 989 F.Supp. 1409, 1411 (court) (finding that Eleventh Amendment barred ADA and FMLA suits against state agencies). This court likewise is of the opinion that in the FMLA, Congress has provided a remedy that is not merely a remedial response to perceived unconstitutional conduct but rather has created a new substantive right. That is to say, although by enacting the FMLA, Congress purported to eradicate work-place gender discrimination, *see* 29 U.S.C. § 2601(b)(4), the Act crosses "the line between measures that remedy or prevent unconstitutional actions and measures that make a substantive change in the governing law." *Boerne v. Flores*, 521 U.S. at 519, 117 S.Ct. at 2164. As aptly observed by the court in *Thomson:*

> The creation by statute of an affirmative entitlement to leave distinguishes the FMLA from other statutory provisions designed to combat discrimination. In effect, Congress, insofar as it purports to rely on the Fourteenth Amendment

---

8. Although three courts have concluded that Congress effectively abrogated the states' Eleventh Amendment immunity in enacting the FMLA, none of those courts has conformed to the analysis dictated by *Flores*. The court in *Knussman v. State of Maryland*, 935 F.Supp. 659, 663 (D.Md.1996), found that Congress had clearly manifested its intent to abrogate immunity, but did not consider the further issue of whether Congress acted pursuant to a valid exercise of power since the parties failed to raise the issue. In *Biddlecome v. University of Texas*, Civ. Action No. 96–1872, 1997 WL 124220, at *3 (S.D.Tex. Date 1997), the court, likewise, concluded that Congress had manifested its intent to

abrogate immunity. Yet in addressing Congress's authority, the court failed to undertake a proportionality analysis and instead looked only to the text of §§ 2611(4) and 2601(b) to conclude that "Congress appears to have drawn its power to enact the FMLA from both the Commerce Clause and the Fourteenth Amendment." *Id.* Finally, in *Jolliffe v. Mitchell*, 986 F.Supp. 339, 342–43 (W.D.Va.1997), the court concluded Eleventh Amendment immunity to be abrogated, relying solely on its finding that Congress had clearly expressed its intention to do so by enacting the FMLA. In the absence of a complete examination of the issue, the conclusions of these courts cannot be considered of any analytical value.

as the basis of the FMLA, is attempting to dictate that the Equal Protection Clause of the Fourteenth Amendment requires that employees be furnished twelve weeks of leave per year for the reasons set forth in the Act. This is patently the sort of substantive legislation that exceeds the proper scope of Congress' authority under § 5.

*Thomson,* 5 F.Supp.2d at 579. Under *Flores,* therefore, it follows that the states' Eleventh Amendment immunity remains intact, notwithstanding Congress's evident intention that it be abrogated. *See Seminole Tribe,* 517 U.S. at 55, 116 S.Ct. at 1123. Accordingly, plaintiff's FMLA claim will be dismissed.

Although the Eleventh Amendment remains a bar to plaintiff's FMLA claim, it does not also bar her ADA claim, and the state's contention otherwise is manifestly without merit. *See Coolbaugh,* 136 F.3d at 438 ("We ... hold that the ADA represents a proper exercise of Congress' Section 5 enforcement power under the Fourteenth Amendment."). The court now turns to the substance of Darby's ADA claim.

■ Plaintiff contends that the Department has taken adverse employment actions against her "because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). More particularly, she charges that as a consequence of her association with her mother, son and daughter, whom she contends were known by the Department to have disabilities, she received both written and verbal reprimands, poor work evaluations and harassment from co-workers and supervisors. However, none of the described actions constitutes an "ultimate employment decision" proscribed by the ADA. *See Dollis v. Rubin,* 77 F.3d 777, 781–82 (5th Cir.1995) ("Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions."); *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707 (5th Cir.1997) (Title VII intended to address "ultimate employment decisions" which include hiring, granting leave, discharging, promoting and compensating); *Gunderson v. Neiman–Marcus Group, Inc.,* 982 F.Supp. 1231, 1235 n. 5 (N.D.Tex. 1997) (citing *Dollis* for proposition that "the ADA was never meant to address every decision made by employers"); *see also Dupre v. Harris County Hosp. Dist.,* 8 F.Supp.2d 908, 924 (S.D.Tex.1998) (quoting *Dollis,* 77 F.3d at 781) ("The anti-retaliation provision [of the ADA] was 'designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.'"). Accordingly, the court finds that Darby has failed to establish that she has suffered an "adverse action," a requisite element of her prima facie case. *See Rizzo v. Children's World Learning Centers, Inc.,* 84 F.3d 758, 763 (5th Cir.1996) (to prevail on ADA claim, plaintiff "must prove that (1) she has a disability; (2) she was qualified for the job; and (3) an adverse employment decision was made solely because of her disability").[9]

9. In *Rizzo,* the Fifth Circuit concluded that a genuine issue of material fact existed as to whether the defendant had taken adverse actions against the plaintiff by: "(1) remov[ing] her from her driving duties; (2) reduc[ing] her hours; (3) forc[ing] her to work a split shift; and (4) forc[ing] her to work in the kitchen, which she found demeaning." *Rizzo,* 84 F.3d at 765. Accordingly, the court reversed the district court's grant of summary judgment in favor of the employer and remanded the case for trial. *Id.* In its first *Rizzo* decision, the Fifth Circuit did not explicitly require that actions taken against the plaintiff constitute "ultimate employment decisions" in order to be actionable under the ADA, and as one court subsequently observed, the Fifth Circuit did not expressly determine in *Rizzo* whether the rationale employed in *Mattern* and *Dollis,* i.e., that only "ultimate employment decisions" are actionable under Title VII, also applies to cases under the ADA. *See Saylor v. Ridge,* 989 F.Supp. 680, 689 n. 4 (E.D.Pa.1998). However, in its opinion on

Darby does complain of some conduct which would constitute an ultimate employment decision, namely that she was denied leave in two instances. Yet neither of the claimed instances of leave denial—once when she needed to be off to deal with the repossession of her vehicle and once to testify at a fellow employee's grievance proceedings—appears to be at all related to a disability suffered by one of Darby's family members. Even were they somehow related to a family member's disability, the regulations interpreting the ADA make it clear that the Department was not obligated to accommodate Darby to allow her to care for her allegedly disabled family members. *See* 29 C.F.R. § 1630, App. ("[A]n employee would not be entitled to a modified work schedule as an accomodation to enable the employee to care for [a family member] with a disability."). Accordingly, summary judgment will be granted as to this claim, as well.

Based on the foregoing, it is ordered that the Department's motion for summary judgment is granted and that plaintiff's complaint be dismissed with prejudice. It is further ordered that plaintiff's motions "for leave to rescind motion to dismiss" and for the appointment of counsel are denied.

the appeal after remand, the Fifth Circuit, in upholding the jury's verdict in favor of the plaintiff on her ADA discrimination claim, implicitly required proof of an ultimate employment decision, i.e., that the plaintiff had been demoted. *Rizzo v. Children's World Learning Centers, Inc.*, 173 F.3d 254, 260 (5th Cir.1999). The court observed:

> Viewing the evidence in the light most favorable to the appellee, we must disagree [with the employer's argument that Rizzo was never demoted]. Rizzo's hours were reduced, resulting in lost wages. To compensate for the reduction, Rizzo was forced to work a split-shift of early mornings and late afternoons. Even with the split-shift she was not working enough hours to keep her full benefits package (though we recognize that she never actually lost her benefits). She was removed from her duties as the van driver. In the light most favorable to Rizzo, a reasonable juror could clearly find that she was demoted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

Moreover, the similarity of the language of Title VII and the ADA persuades the court that the Fifth Circuit would employ the same method of analyzing ADA disparate treatment claims as it does Title VII claims. *Compare* 42 U.S.C. § 2000e–2(a)(1) (an employer shall not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin"), *with* 42 U.S.C. § 12112(a) (a covered entity shall [not] "discriminate against a qualified individual with a disability because of the disability of such individual in record to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment").