**John AMATO, Plaintiff,**

v.

**ST. LUKE'S EPISCOPAL HOSPITAL, Defendant.**

**No. CIV. A. H–96–1870.**

United States District Court, S.D. Texas.

Aug. 25, 1997.

Robert S. DuBoise, DuBoise Hengst and Henderson, Houston, TX, for Plaintiff.

T.J. Wray, Fulbright and Jaworski, Houston, TX, for Defendant.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Defendant St. Luke's Episcopal Hospital's ("St. Luke's") Motion for Summary Judgment (# 20). St. Luke's seeks summary judgment on Plaintiff John Amato's ("Amato") claims of violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and intentional infliction of emotional distress.

Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, this Court is of the opinion that St. Luke's motion should be granted.

### I. Background

Amato was employed by St. Luke's as a nursing care assistant from July 1990 until he was terminated in August 1994. Amato suffers from retinitis pigmentosa ("RP"), which has reduced his visual acuity to less than 20/200, and, therefore, he is classified as legally blind. St. Luke's does not dispute that the plaintiff suffers from RP or that he is classified as legally blind. It is also undisputed that Amato disclosed his medical condition to St. Luke's. While at St. Luke's, Amato wore corrective eyeglasses.

As a nursing care assistant, Amato's duties included, but were not limited to: cleaning operating rooms; responding to pages; and picking up deliveries, supplies, equipment, specimens, and blood. Amato was also responsible for mopping, picking up trash, and providing stretchers and recovery room beds for patients. In addition, Amato transported patients between their hospital rooms and the operating rooms. Amato testified that he had no problem moving patients to the proper location in the hospital.

In 1991, Amato received a copy of St. Luke's new employee handbook. Amato testified at deposition that, as a St. Luke's employee, he was responsible for knowing the contents of the handbook. The handbook included St. Luke's revised time and attendance policy, which provided that each employee is expected to report as scheduled and to keep absences to a minimum. The policy specifically provided that when an employee's attendance record fell below St. Luke's acceptable standards for unscheduled absences, the following corrective action steps were to be taken:

· on the fourth (4th) unscheduled occasion of absence during the attendance

year, the employee will receive a verbal conference;

· on the sixth (6th) unscheduled occasion of absence during the attendance year, the employee will receive a written conference;

· on the seventh (7th) unscheduled occasion of absence during the attendance year, the employee will receive an additional written conference and be placed on probation for excessive absenteeism for ninety (90) days or the remainder of the attendance year, whichever is greater;

· any further unscheduled occasions of absence during the probationary period may result in the discharge of the employee for excessive absenteeism;

2. any employee who is placed on probation for absenteeism in two consecutive years may be discharged for excessive absenteeism.

Amato had a history of poor attendance throughout his employment at St. Luke's. Consequently, he was repeatedly counseled and disciplined for excessive absenteeism. On June 24, 1991, Amato received a verbal employee conference report due to four unscheduled absences. On December 27, 1991, he received a written employee conference report and was placed on probation for ninety days as a result of his continued poor attendance. Amato was then cautioned that immediate improvement in his attendance was required. By April 28, 1992, Amato had four additional absences. In accordance with St. Luke's attendance policy, he was given another verbal conference. On June 26, 1992, Amato received an additional written conference because he had accrued an additional six unscheduled absences. On August 31, 1992, Amato was given a written conference report and placed on probation for ninety days because of his continued absenteeism. Amato drafted a written statement in response to this written conference record in which he attributed his unscheduled absences to abdominal pain or gastritis.

On November 18, 1992, Amato called St. Luke's to report that he was sick with a headache. Because he was still on probation, this additional unscheduled absence was grounds for termination. St. Luke's opted, however, to extend Amato's probationary period for thirty more days rather than terminating him. He was once again warned that his attendance must improve immediately. Amato signed the employee conference record but did not include any comments. Despite these explicit warnings, Amato's poor attendance continued. By June 16, 1993, he had four unscheduled absences within the 1993 attendance year. As a result, Amato was given another verbal conference report. By September 24, 1993, he had accumulated a total of six unscheduled absences. Once again, Amato was given a verbal conference report and was informed that he must improve his attendance immediately. By October 7, 1993, however, Amato had seven unscheduled absences and, as a result, was placed on probation for the second time.

By February 1994, Amato had accumulated two additional unscheduled absences. In light of the two consecutive probationary periods, St. Luke's management met with Amato to advise him that pursuant to St. Luke's attendance policy, he would be terminated if he accumulated an additional absence during the remainder of the 1994 attendance year. On August 4 and 5, Amato did not report to work. On August 8, 1994, St. Luke's terminated Amato for excessive absenteeism. Amato concedes that his attendance was poor under the standards set forth in St. Luke's attendance policy, but he contends that his vision disability caused him at times to board the wrong Metro bus, leading him to miss work altogether. Amato further claims that he missed work on other occasions due to headaches caused by RP.

Amato timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a right to sue letter. On June 17, 1996, Amato filed this action alleging that St. Luke's had discriminated against him in violation of the ADA and had intentionally inflicted emotional distress upon him.

II. *Analysis*

A. *Summary Judgment Standard*

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Adams,* 836 F.2d 958, 960 (5th Cir.1988). The moving party, however, need not negate the elements of the non-movant's case. *See Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996) (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)).

Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *See Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2551–52; *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514; *Wallace,* 80 F.3d at 1047; *Little,* 37 F.3d at 1069, 1075. The controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. *See Palmer v. BRG of Ga., Inc.,* 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 402 n. 5, 112 L.Ed.2d 349 (1990); *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Judwin Properties, Inc. v. United States Fire Ins. Co.,* 973 F.2d 432, 435 (5th Cir.1992). Nevertheless, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movant's burden." *Douglass v. United Serv. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996) (citing *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)); *see Wallace,* 80 F.3d at 1047; *Little,* 37 F.3d at 1075. Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *See Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2551. "In such situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.

### B. Americans with Disabilities Act

The ADA is a federal antidiscrimination statute designed to prevent otherwise qualified individuals from being discriminated against in employment based on a disability. *See* 29 C.F.R. § 1630, App.; *Taylor v. Principal Fin. Group, Inc.,* 93 F.3d 155, 160–61 (5th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996). To achieve this goal, the ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see also Taylor,* 93 F.3d at 162; *Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 396 (5th Cir.1995); *Daugherty v. City of El Paso,* 56 F.3d 695, 696 (5th Cir.1995), *cert. denied,* 516 U.S. 1172, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996); *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 725 (5th Cir.1995). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without a reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

### 1. Prima Facie Case and Burden of Proof

■ To recover under the ADA, the plaintiff must prove that he was discriminated against on the basis of his disability. *See Daigle,* 70 F.3d at 396; *Jacques v. Clean–Up Group, Inc.,* 96 F.3d 506, 510–11 (1st Cir. 1996); *Allison v. Department of Corrections,* 94 F.3d 494, 497 (8th Cir.1996). The plaintiff may present either direct evidence of disabil-

ity discrimination or may employ the indirect method of proof utilized in other types of discrimination cases. *See Taylor,* 93 F.3d at 162; *Rizzo v. Children's World Learning Ctrs., Inc.,* 84 F.3d 758, 762 (5th Cir.1996); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). In the absence of direct evidence of discrimination, the plaintiff can establish a *prima facie* case under the ADA by showing that: (1) he has a "disability"; (2) he is qualified for the job; (3) he was subject to an adverse employment action; and (4) he was replaced by a non-disabled person or was treated less favorably than non-disabled employees.[1] *See Burch v. Coca–Cola Co.,* 119 F.3d 305, 320 (5th Cir.1997) (citing *Daigle,* 70 F.3d at 396); *see also Turco v. Hoechst Celanese Corp.,* 101 F.3d 1090, 1092 (5th Cir.1996) (citing *Rizzo,* 84 F.3d at 763).

If the plaintiff succeeds in making this *prima facie* showing, a rebuttable presumption of discrimination arises, and the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *See Daigle,* 70 F.3d at 396 (citing *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094); *Olitsky v. Spencer Gifts, Inc.,* 964 F.2d 1471, 1478 n. 19 (5th Cir.1992); *EEOC v. Texas Bus Lines,* 923 F.Supp. 965, 969–70 (S.D.Tex.1996). While the employer need not prove that its actions were motivated by the legitimate reason, it must produce some evidence in support of its proffered reason. *See Daigle,* 70 F.3d at 396 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–10, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993)); *Texas Bus Lines,* 923 F.Supp. at 970. "The defendant's burden is merely one of production and not of persuasion." *See Burdine,* 450 U.S. at 257–58, 101 S.Ct. at 1095–96. "If the employer produces any evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has satisfied its burden of produc-

tion." *Daigle,* 70 F.3d at 396 (quoting *St. Mary's Honor Ctr.,* 509 U.S. at 507, 113 S.Ct. at 2747); *see also Texas Bus Lines,* 923 F.Supp. at 970.

■ If the employer meets its burden of production, the presumption is dissolved, and the burden shifts back to the plaintiff to demonstrate that the proffered reason is a pretext for discrimination-the defendant's alleged nondiscriminatory reason is false and the real reason for the adverse action is disability discrimination. *See Armendariz v. Pinkerton Tobacco Co.,* 58 F.3d 144, 148 (5th Cir.1995) (citing *St. Mary's Honor Ctr.,* 509 U.S. at 510–511, 113 S.Ct. at 2748–49); *Daigle,* 70 F.3d at 396. As with discrimination cases generally, the plaintiff at all times bears the ultimate burden of persuading the trier of fact that he has been the victim of illegal discrimination based on his disability. *See id.* (citing *St. Mary's Honor Ctr.,* 509 U.S. at 511, 113 S.Ct. at 2749). To prevail on an ADA claim, the plaintiff must prove that an adverse employment decision was made solely because of his disability. *See Turco,* 101 F.3d at 1092; *Rizzo,* 84 F.3d at 763.

### a. *Otherwise Qualified Individual with a Disability*

In this case, St. Luke's does not contest that Amato suffers from a disability. St. Luke's contends, however, that Amato was not otherwise qualified for his position, as he was unable to maintain an acceptable attendance record.

As discussed above, a "qualified individual with a disability" under the ADA is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds...." 42 U.S.C. § 12111(8). Therefore, in order for Amato to demonstrate that he was qualified for the nursing care assistant position, he must establish that: (1) he could perform the

---

1. "The elements of a plaintiff's prima facie case necessarily vary according to the facts of the case and the nature of the claim." *LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 (5th Cir.1996). Thus, the fourth element merely sets forth two nonexclusive ways in which a plaintiff can demonstrate that an adverse employment decision

was made "under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *see also E.E.O.C. v. Huber Corp.,* 927 F.2d 1322, 1328, n. 24 (5th Cir.1991).

essential functions of the job; or (2) if he was not able to perform the essential functions of the job, that a reasonable accommodation by St. Luke's would have enabled him to perform those functions. *See Chandler v. City of Dallas,* 2 F.3d 1385, 1393–94 (5th Cir. 1993).

### b. *Essential Functions of the Job*

■ Essential functions are those that bear more than a marginal relationship to the job at issue. *See id.* In determining the essential functions of a position, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). Without regard to the essential nature of certain functions, however, no disabled person is "qualified" if he needs accommodation precisely because he failed to manage an otherwise controllable disorder. *See Siefken v. Village of Arlington Heights,* 65 F.3d 664, 666–67 (7th Cir.1995) (diabetic who failed to monitor his controllable condition did not state a cause of action under the ADA).

■ St. Luke's asserts that regular attendance is an essential function of all of its jobs, including that of a nursing care assistant. Accordingly, the hospital distributed to all of its employees a written statement of its time and attendance policies. It is apparent from this statement that St. Luke's considers regular attendance to be an essential function of the job held by Amato. Amato's description of his job duties further confirms that his presence at the hospital was essential for the performance of his job. Indeed, numerous courts have held that attendance at work, the most basic element of an employee's duties, is an essential element of almost all jobs. *See, e.g., Tyndall v. National Educ. Ctrs., Inc.,* 31 F.3d 209, 213 (4th Cir.1994) (an employee must be willing and able to come to work on a regular basis); *Carr v. Reno,* 23 F.3d 525, 529 (D.C.Cir.1994) ("essential function of government job is an ability to appear for work"); *Law v. United States Postal Serv.,* 852 F.2d 1278, 1279–80

(Fed.Cir.1988) ("an agency is inherently entitled to require an employee to be present during scheduled work times"); *U.S. E.E.O.C. v. AIC Sec. Investigation Ltd.,* 820 F.Supp. 1060, 1064 (N.D.Ill.1993) (for ADA purposes, attendance is necessary for any job); *Walders v. Garrett,* 765 F.Supp. 303, 309 (E.D.Va.1991) (generally employees cannot perform their job without attendance); *Santiago v. Temple Univ.,* 739 F.Supp. 974, 979 (E.D.Pa.1990) ("[a]ttendance is necessarily the fundamental prerequisite to job qualification"), *aff'd,* 928 F.2d 396 (3d Cir.1991); *Barfield v. Bell South Telecomms., Inc.,* 886 F.Supp. 1321, 1326 (S.D.Miss.1995) ("regular attendance at work is an essential function of virtually all jobs"). Accordingly, as with most jobs, regular attendance is an essential function of Amato's position with St. Luke's.

### c. *Capability of Essential Functions Without Accommodation*

■ Amato maintains that he could perform the essential functions of his job. In support of his position, Amato points out that St. Luke's representative, Rena Sebesta, admitted that Amato competently performed every other essential function of his job, except regular attendance. Nevertheless, Amato concedes that he had eight unscheduled absences in 1991, eight unscheduled absences in 1992, seven unscheduled absences in 1993, and four unscheduled absences in 1994. Furthermore, at deposition, Amato admitted that his record of attendance was "poor." Hence, it is manifest that, during four consecutive years, the plaintiff was unable to perform an essential function of his job-regular attendance at work. Thus, Amato cannot be said to be capable of performing the essential functions of his job without reasonable accommodation.

### d. *Capability of Essential Functions with Reasonable Accommodation*

■ Amato also contends that he would be able to perform the essential aspects of his job if the hospital made reasonable accommodation for his disability. Specifically, he suggests an accommodation of leave flexibility and unpaid leave.

Under the ADA, the term "Reasonable Accommodation," may include—

(a) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

■ The plaintiff is required to demonstrate, as part of his *prima facie* case, that an accommodation of his disability exists and that such accommodation is reasonable. *See Riel v. Electronic Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir.1996); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir.1997) (citing *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997)). This burden of production is not a heavy one and merely entails demonstrating the existence of a plausible accommodation "the costs of which, facially, do not clearly exceed its benefits." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995). Once the plaintiff has done this, the defendant has the burden of showing that the proposed accommodation is unreasonable, which "merges, in effect, with its burden of showing, as an affirmative defense, that the proposed accommodation would cause it to suffer an undue hardship." *See id.* In practice, the questions of whether an accommodation is reasonable and whether it creates an undue burden are almost identical. *See, e.g., School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987) ("Accommodation is not reasonable if it either imposes 'undue financial and administrative burdens' on a grantee, or requires a 'fundamental alteration in the nature of [the] program'") (citation omitted); *Riel*, 99 F.3d at 681 ("The terms "reasonable accommodation" and "undue hardship" often go hand-in-hand."); *Hall v. United States Postal Serv.*, 857 F.2d 1073, 1080 (6th Cir.1988) (stating that an accommo-

dation is not reasonable if it places an undue burden on the employer).

An examination of Amato's suggested accommodations reveals that they differ in kind from the types of accommodations set forth in the ADA definition. While this definition is non-exclusive, each example of a "reasonable accommodation" listed has as its inherent prerequisite an employee who reports for work. *See* 42 U.S.C. § 12111. Furthermore, Amato's suggested accommodations are unreasonable, in that "these accommodations do not address the heart of the problem: the unpredictable nature of … [plaintiff's] absences." *See Jackson v. Veterans Admin.*, 22 F.3d 277, 279 (11th Cir.1994).

In *Jackson*, the plaintiff was terminated from a probationary housekeeping position after accruing six unforeseen absences in a period of about two and one-half months, ostensibly due to his rheumatoid arthritis. *See id.* at 278. The plaintiff requested that his employer accommodate his disability by allowing him to trade work days with other employees, delaying the start time of his shift, or by delaying some of his tasks to another day. *See id.* The Eleventh Circuit held that such accommodations were not reasonable, however, as they would place an undue hardship on the employer. *See id.* The court reasoned that the plaintiff's suggested accommodations would require the employer to make last-minute arrangements for the plaintiff's work to be done by some other employee every time the plaintiff was unexpectedly absent. *See id.* at 279.

Similarly, in the instant case, Amato's suggested accommodations provide no remedy for the sporadic and unpredictable nature of Amato's absences. His suggestions essentially require the hospital to retain and compensate a surplus of employees on Amato's scheduled work days to be available in the event he fails to report for work. This would require substantial modification of the hospital's basic employment practice of requiring employees to follow a regular schedule of attendance. Altering an employer's general practice of requiring regular attendance would be unduly burdensome to most employers, but is especially onerous for a hospital where the predictability of a certain level

of staff is essential for proper patient care. On its face, the financial burden of such an accommodation outweighs any conceivable benefit. Moreover, Amato's suggestions do not address the manner in which St. Luke's could accommodate Amato's disability at his place of employment, but rather, are merely ways in which the hospital could deal with Amato's absences from work. Thus, the suggested accommodations place an undue burden on the employer, and therefore are not required under the ADA. *See Daugherty,* 56 F.3d at 700.

In short, Amato's disability affects his employment, if at all, long before he arrives at his place of employment or before he fails to arrive. Therefore, any accommodation of this disability, aside from tolerating numerous sporadic absences, is really outside the employer's realm. Furthermore, "[w]hile the ADA focuses on eradicating barriers, the ADA does not relieve a disabled employee or applicant from the obligation to perform the essential functions of the job. To the contrary, the ADA is intended to enable disabled persons to compete in the work-place based on the same performance standards and requirements that employers expect of persons who are not disabled." *Foreman v. Babcock & Wilcox Co.,* 117 F.3d 800, 807 (5th Cir. 1997) (citation omitted). Yet, Amato's suggested accommodations seek to exempt him from the performance standards and attendance requirements demanded of other St. Luke's employees. Hence, because Amato is unable to perform the essential functions of his job due to his lack of regular attendance, and his suggested accommodations are neither reasonable nor effective, he cannot be viewed as an otherwise qualified individual with a disability under the ADA.

### e. *Failure to Inform of Limitation and Request Accommodation*

In any event, if Amato were found to be a qualified person as defined by the ADA, a review of the evidence indicates that he failed to inform St. Luke's of any limitation resulting from his disability or to request accommodation.

An employee has the initial duty to inform the employer of his disability before ADA liability is triggered for the employer's failure to provide accommodation. *See Hunt–Golliday v. Metropolitan Water Reclamation Dist.,* 104 F.3d 1004, 1012 (7th Cir.1997). This is because the employee is in the best position to know the extent of his limitations and the scope of the requisite accommodations. *See Taylor,* 93 F.3d at 165. In making a request for accommodation, the ADA "does not require the plaintiff to speak any magic words before he is subject to its protections." *Schmidt v. Safeway, Inc.,* 864 F.Supp. 991, 997 (D.Or.1994); *see also Bultemeyer v. Fort Wayne Community Schs.,* 100 F.3d 1281, 1285 (7th Cir.1996). Once a request for an accommodation is made, the responsibility for fashioning a reasonable accommodation is shared between the employer and employee. *See id.* Thus, to prove discrimination, an employee must show that the employer knew of the employee's substantial physical or mental limitation. *See Taylor,* 93 F.3d at 163.

As the Fifth Circuit has noted, it is important to distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability, because the ADA requires employers to accommodate limitations, not disabilities. *See id.* at 164–65. Furthermore, the ADA does not require an employer to assume that an employee with a disability necessarily suffers from a limitation; "a disabled employee cannot remain silent and expect his employer to bear the initial burden of identifying the need for, and suggesting, an appropriate accommodation." *Id.* at 165; *Scheer v. City of Cedar Rapids,* 956 F.Supp. 1496, 1500 (N.D.Iowa 1997). It is the employee's initial request for an accommodation that triggers the employer's obligation to institute one: "[i]n general ... it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed." 29 C.F.R. § 1630.9, App.; *see also Morton v. GTE North, Inc.,* 922 F.Supp. 1169, 1180 (N.D.Tex.1996) ("the employee cannot expect the employer to read [his] mind and know [he] secretly wanted a particular accommodation and sue the employer for not providing

it."). Accordingly, no liability arises under the ADA when an employee fails to request a reasonable accommodation. *See Taylor,* 93 F.3d at 165.

In this situation, Amato testified that he had no difficulty performing any of his job duties when at work and that he neither requested nor could even think of an appropriate accommodation. He further testified that he did not request a change in job shift or work hours because the shift he had was "the best schedule," as he was able to ride to work with his brother. At deposition, Amato stated both that he did not need accommodation and was unaware of any manner in which the hospital could have accommodated him:

Q: You didn't need accommodation to perform you duties, correct?

A: I didn't need accommodations.

Q: Okay. And—but you couldn't think of anything—anyway that you could have been—that St. Luke's could have accommodated you?

A: I was trying, and, no, I couldn't think of anything.

When the plaintiff fails to request an accommodation, the defendant cannot be liable for failing to provide one. *See Taylor,* 93 F.3d at 165. In light of Amato's failure to inform St. Luke's of any work limitations stemming from his RP or to request any accommodation, the hospital cannot be held liable under the ADA for disability discrimination.

### f. Circumstances of Termination Indicative of Unlawful Discrimination

■ In addition, Amato has failed to satisfy the fourth element of a *prima facie* case. Amato has not demonstrated that the circumstances of his termination give rise to an inference of unlawful discrimination by showing that he was replaced by a non-disabled person, that he was treated less favorably than non-disabled employees, or through some other means. Although "[t]he evidence necessary to support an inference of discrimination will vary from case to case," Amato has presented no evidence which would sustain such an inference. *Rhodes v. Guiberson*

*Oil Tools,* 75 F.3d 989, 994 (5th Cir.1996). Because Amato has produced no evidence with respect to this element, he has likewise failed to establish a *prima facie* case.

### 2. Nondiscriminatory Reason for Termination and Lack of Pretext

■ Finally, even if Amato had established the necessary elements of a *prima facie* case, St. Luke's has adequately demonstrated a legitimate, nondiscriminatory reason for terminating Amato-excessive absenteeism under the attendance policy.

■ Once the defendant articulates a legitimate, nondiscriminatory reason for the employment action at issue, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's articulated reason is false and that prohibited discrimination is the real reason for the employer's action. *See St. Mary's Honor Ctr.,* 509 U.S. at 510–11, 113 S.Ct. at 2748–49; *Grimes v. Texas Dep't of Mental Health & Mental Retardation,* 102 F.3d 137, 140 (5th Cir.1996). In the context of a motion for summary judgment, "[a] jury issue will be presented and a plaintiff can avoid summary judgment … if the evidence taken as a whole (1) creates a fact issue as to whether each of the stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [disability] was [the sole cause of] the actions of which the plaintiff complains." *Rhodes,* 75 F.3d at 994; *see Hall v. Gillman, Inc.,* 81 F.3d 35, 37 (5th Cir.1996). The question is not whether the plaintiff proves pretext, but, rather, whether the plaintiff raises a genuine issue of fact regarding pretext. *See id.* (citing *Thornbrough,* 760 F.2d at 646); *Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 813 (5th Cir.1991).

■ In attempting to establish pretext, however, a plaintiff cannot solely rely on his subjective belief that discrimination has occurred. *See Price v. Marathon Cheese Corp.,* 119 F.3d 330, 336 (5th Cir.1997); *Nichols v. Loral Vought Sys. Corp.,* 81 F.3d 38, 42 (5th Cir.1996); *Douglass,* 79 F.3d at 1430; *Ray v. Tandem Computers, Inc.,* 63 F.3d 429, 434 (5th Cir.1995); *Armendariz,* 58

F.3d at 152–53. Similarly, the evidence of pretext must be more substantial than pure speculation. *See Nichols*, 81 F.3d at 42; *Ralston Purina Co. v. Hobson*, 554 F.2d 725 (5th Cir.1977). Self-serving and speculative testimony is subject to an exacting scrutiny. *SeeMolnar v. Ebasco Constr. Inc.*, 986 F.2d 115, 119 (5th Cir.1993); *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 564 (5th Cir.1983). Moreover, the employment discrimination laws are "not intended to be a vehicle for judicial second guessing of business decisions, nor ... to transform the courts into personnel managers." *EEOC v. Louisiana Office of Community Servs.*, 47 F.3d 1438, 1448 (5th Cir.1995) (citing *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir.1988)); *accord Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 959 (5th Cir.1993); *see also Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577–78, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978); *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir.1993); *Thornbrough*, 760 F.2d at 647. "Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions....' " *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991) (quoting *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988)). Thus, the employer is entitled to summary judgment if the competent evidence taken as a whole would not allow a jury to infer that the actual reason for the adverse employment action was discriminatory. *See Hall*, 81 F.3d at 37; *Atkinson v. Denton Pub. Co.*, 84 F.3d 144, 148 (5th Cir. 1996).

■■■ In the instant case, Amato has made no showing that St. Luke's proffered reason is a pretext for discrimination. Beyond speculation and conjecture, he has adduced no evidence that the hospital's nondiscriminatory reason is untrue or that the real reason for his termination is his disability. Hence, Amato has failed to demonstrate that the hospital's explanation is unworthy of credence. In fact, at deposition, he acknowledged that his attendance was poor. Amato also has made no showing that he was treated less favorably than non-disabled employees who had accrued a similar number of unscheduled absences. To the contrary, the evidence indicates that St. Luke's actually treated Amato with leniency when enforcing its new attendance policy. In November 1992, the hospital extended Amato's probationary period by thirty days, rather than terminate him. Thus, instead of treating Amato less favorably than employees who were not disabled, St. Luke's was more accommodating than required under its own policies. Such conduct is hardly indicative of discriminatory animus. Accordingly, there is no evidence that St. Luke's discriminated against Amato for any reason, much less because of his disability. Under these circumstances, it is apparent that Amato's disability was neither the sole cause nor even a determining factor in his discharge. *See Turco*, 101 F.3d at 1092; *Rizzo*, 84 F.3d at 763. Therefore, Amato has failed to establish a claim cognizable under the ADA, and summary judgment is proper.

### C. Intentional Infliction of Emotional Distress Claim

In his original complaint, Amato alleged that St. Luke's intentionally inflicted emotional distress on him. He now admits, however, that St. Luke's conduct was not extreme and outrageous, an essential element of an intentional infliction of emotional distress claim under Texas law. *See, e.g., Burden v. General Dynamics Corp.*, 60 F.3d 213, 218 (5th Cir.1995); *MacArthur v. University of Tex. Health Ctr.*, 45 F.3d 890, 898 (5th Cir.1995). Thus, Amato concedes that St. Luke's is entitled to summary judgment with respect to this claim.

### III. Conclusion

Accordingly, St. Luke's Motion for Summary Judgment is GRANTED. There are no outstanding issues of material fact with regard to Amato's claims of disability discrimination or intentional infliction of emotional distress, and St. Luke's is entitled to judgment as a matter of law.

IT IS SO ORDERED.