**Kenneth SMITH,**

v.

**LATTIMORE MATERIALS COMPANY.**

**No. 4:02CVC27.**

United States District Court,
E.D. Texas,
Sherman Division.

March 24, 2003.

Kenneth J. Smith, Princeton, TX, pro se.

Gabriel H. Robles, Attorney at Law, Dallas, TX, for plaintiff.

Harold Dean Jones, Dodge, Anderson, Jones, Bezney & Gillman, Dallas, TX, for defendant.

## ORDER

BUSH, United States Magistrate Judge.

Pending before the Court is Defendant's Motion for Summary Judgment, and having considered the motion, the response, and the reply thereto, the Court finds that the motion should be granted.

### Background

This is a case brought pursuant to the American with Disabilities Act, 42 U.S.C. § 12101 ("ADA") against Plaintiff's former employer Defendant Lattimore Materials Company ("Lattimore"). Plaintiff alleges disability based upon a combination of pain associated with an injury to his neck and right shoulder in 1987 and depression and general anxiety which was diagnosed in 1990 while serving in the military. Plaintiff asserts that his prescribed medications

for both conditions prevented him from starting work at the required 7:00 a.m.

On June 3, 1993, Plaintiff was hired by Lattimore. While at Lattimore, Plaintiff worked at various jobs. In March 1999, Plaintiff started working in Special Projects and was required to report to work at 7:00 a.m.

Plaintiff asserts that due to his medications he was unable to start work at the required starting time of 7:00 a.m. Plaintiff asserts that he was allowed to report to work no later than 9:00 a.m. and work each day until he completed his assigned duties. On October 10, 2000, Plaintiff was informed that his work hours were going to change and that he would have to report to work each day by 7:00 a.m. and that he would need to get his forty hours in each week.

Plaintiff responded by indicating that he wanted to go work at a gun range which would put him in a salaried position. Plaintiff indicated to his supervisor that the job at the gun range was something that Plaintiff wanted to do. His supervisor then filled out the resignation forms based upon Plaintiff's request and then discussed it with him. The form states that Plaintiff is resigning his position to take a job at the gun range. Plaintiff signed the form on October 19, 2000 and returned it to Lattimore's home office. Plaintiff admitted in his deposition and in answers to requests for admissions that he resigned and was not terminated by Lattimore.

On September 11, 2002, Lattimore filed its motion for summary judgment. On November 5, 2002, Plaintiff filed his response. On November 12, 2002, Lattimore filed a reply.

### Summary Judgment Standard

The granting of summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c). The trial court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enterprises, Inc. v. Am. Hardware Mut. Ins. Co.,* 655 F.2d 598, 602 (5th Cir.1981) (citations omitted). The party seeking summary judgment carries the burden of demonstrating that there is no actual dispute as to any material fact in the case. This burden, however, does not require the moving party to produce evidence showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party satisfies its burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party has satisfied its burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the nonmovant fails to set forth specific facts in support of allegations essential to that party's claim and on which that party will bear the burden of proof, then summary judgment will be appropriate. *Celotex,* 106 S.Ct at 2552–53. Even if the nonmovant brings forth evidence in support of its allegations, summary judgment will be appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted).

### Analysis

■ To state a cause of action under the ADA, the Plaintiff must show that (1) he is disabled as defined under the Act: (2) is qualified, with or without reasonable accommodation, to perform essential functions of the job at issue; (3) was terminat-

ed or denied certain employment benefits for which he was otherwise eligible, by a covered entity; and (4) such termination or denial of benefits was based upon disability. 42 U.S.C. § 12112(a); *Harding v. Winn–Dixie Stores, Inc.*, 907 F.Supp. 386 (M.D.Fla.1995).

Plaintiff may establish a claim of discrimination under the ADA by producing direct evidence or by using the *McDonnell Douglas* analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In this case, there is no direct evidence; therefore, Plaintiff must establish a prima facie case of discrimination. If Plaintiff makes out a prima facie case, Defendant must then articulate a legitimate nondiscriminatory reason for its action. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir.1999). Plaintiff then must offer evidence that the nondiscriminatory reason was false and that the real reason for the adverse action was unlawful discrimination. *Id.*

Lattimore moves for summary judgment asserting that Plaintiff cannot make out a prima facie case. To establish a prima facie case of discrimination based on the ADA, Plaintiff must show that he has a disability, is qualified for the job, an adverse employment decision was made solely because of his disability and he was replaced by or treated less favorably than non-disabled employees. *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir.1996) (Citation omitted); *McInnis v. Alamo Comm. College Dist.*, 207 F.3d 276, 280 (5th Cir.2000).

### Is Plaintiff Disabled?

Defendant asserts that the Plaintiff does not have a disability under the ADA. The ADA defines "disability" using three alternatives:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

Whether a person has a disability as defined under the ADA necessarily calls for an individualized inquiry. The Court must first decide whether Plaintiff has presented facts that his alleged disability is an impairment that substantially limits any major life function other than working. *Hamilton v. Southwestern Bell Telephone Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998). Major life activities include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. 29 C.F.R. § 1630.2(i). The regulations provide that whether an impairment substantially limits a major life activity is determined in light of (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).

Plaintiff asserts that the medications he takes for pain and depression substantially limit major life activities. Plaintiff has failed to provide summary judgment evidence that he has a record of such an impairment that substantially limits a major life activity or that his alleged impairment meets the criteria of 42 U.S.C. § 12102(2)(A) or (B). His only complaint appears to be that his combination of medication made him too groggy to be at work by 7:00 a.m. Thus, the Court finds for the Defendant on this issue.

Next, the Court must decide whether Plaintiff's alleged disability had an effect on the major life activity of working. *Hamilton*, 136 F.3d at 1051. The

regulations provide for the major life activity of "working" as follows:

(i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

(ii) In addition to the factors listed in paragraph (j)(2) of this section, the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working":

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(2) and (3).

Plaintiff presents no evidence that his disability prevents him from performing an entire class of jobs, or even a broad range of jobs. The inability to perform a single particular job (because the starting time is too early for the Plaintiff) does not constitute a substantial limitation in the major life activity of working. 29 C.F.R. 1630.2(h)(3)(i).

The Court must also consider whether Plaintiff qualifies as disabled under Subpart (B). The regulations provide:

Has a record of such impairment means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.

29 C.F.R. § 1630.2(k).

The Court must also consider whether Plaintiff is under a disability under Subpart (C). The regulations define "regarding as having such an impairment" as follows:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(*l*). Plaintiff has failed to offer any evidence of a record of disability or that Plaintiff was regarded as disabled by Lattimore.

### Is Plaintiff an Otherwise Qualified Individual with a Disability?

■ Even if Plaintiff would be considered disabled, it is questionable whether he is an otherwise qualified individual. In order for Plaintiff to demonstrate that he was qualified for the position, he must establish that: (1) he could perform the essential functions of the job; or (2) if he was not able to perform the essential functions of the job that a reasonable accom-

modation by Lattimore's would have enabled him to perform these functions. *Amato v. St. Luke's Episcopal Hosp.*, 987 F.Supp. 523, 529 (S.D.Tex.1997).

 In short, Plaintiff's alleged disability affects his employment, if at all, long before he reports to work or before he fails to arrive on time. An employer has a right to expect an employee to report on time. Reporting on time and regular attendance is an essential function of any job. *Amato*, 987 F.Supp. at 531–32. The Court finds by the evidence in the record that regular and prompt attendance of employees is a fundamental prerequisite for the type of construction activity Defendant performs. Plaintiff's demand for a "flex" work schedule is unduly burdensome and not realistic. The requirement that employees arrive at work punctually is a legitimate business reason.

Even if Plaintiff is disabled due to medication related to depression, his inability to get to work on time, if at all, made him unqualified to perform the functions of his job. Accordingly, Plaintiff cannot avail himself of the ADA. *Kotlowski v. Eastman Kodak Co.*, 922 F.Supp. 790 (W.D.N.Y. 1996).

Plaintiff seeks to excuse himself from the performance standards and attendance requirements demanded of other Lattimore employees. Because Plaintiff is unable to perform the essential functions of his job and his suggested accommodation is neither reasonable nor effective, Plaintiff cannot be viewed as an otherwise qualified individual with a disability under the ADA.

### Did Plaintiff Suffer an Adverse Employment Decision?

Lattimore asserts that there was no adverse employment action since Plaintiff voluntarily resigned. Plaintiff asserts that he resigned his employment only after being informed that his reporting time would change to 7:00 a.m. on October 10, 2000.

Plaintiff asserts that only after he determined that he could not meet the new reporting time did he seek a job at the gun range and submit his resignation.

 Essentially, Plaintiff asserts that he suffered an adverse employment action because he was constructively discharged. When an employee resigns, he may satisfy the adverse employment element of a discrimination claim by proving constructive discharge. *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir.2000). To prove constructive discharge, Plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign. *Id.* Plaintiff's resignation must have been reasonable under the circumstances. *Id.* The following factors should be considered: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off, whether accepted or not. *Id.; Barrow v. New Orleans SS. Ass'n*, 10 F.3d 292, 297 (5th Cir.1994).

 Plaintiff has failed to offer sufficient evidence of the *Barrow* factors. Plaintiff did not experience a demotion nor a reduction in salary or job responsibilities. Plaintiff was not assigned to either degrading work and early retirement was not an issue. Lattimore required all employees to arrive at work at 7:00 a.m. Plaintiff has failed to offer sufficient summary judgment evidence that he was constructively discharged.

### A Legitimate Nondiscriminatory Reason and Pretext

In the alternative, Lattimore asserts that it had a legitimate nondiscriminatory

reason for the end of Plaintiff's employment. Plaintiff's schedule demand is unduly burdensome and not realistic. Defendant's schedule for work is a legitimate business reason. The Court further finds that Plaintiff is unable to produce evidence that having a 7:00 a.m. starting time is pretextual.

It is therefore ORDERED that Defendant's Motion for Summary Judgment is hereby GRANTED and all claims against Defendant are DISMISSED with prejudice.